Filed 12/24/13  P. v. Murillo CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>MANUEL JOHN MURILLO,<br><br>　　　Defendant and Appellant. | H038775<br>(Santa Cruz County<br>Super. Ct. No. F22521) |

　　　A jury found Manuel Murillo (appellant) guilty of one count of possession for sale of a controlled substance—heroin (Health & Saf. Code, § 11351, count one) and one count of destroying or concealing evidence (Pen. Code, § 135, count two).  Subsequently, the court found true an allegation that appellant had suffered one prior strike conviction within the meaning of Penal Code section 667, subdivisions (b)-(i),[1] and that he was ineligible for a county jail sentence.  (Pen. Code § 1170, subds. (h)(3) and (f).)

　　　After the court denied appellant's *Romero* motion (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497), the court sentenced appellant to six years in state prison consisting of the midterm of three years on count one, doubled pursuant to Penal Code section 667, subdivision (c).  As to count two, a misdemeanor, the court sentenced

---

[1]　　　The court found not true the allegation that appellant had suffered a second strike conviction.

appellant to 37 days in county jail, credit for time served. The court imposed various fines and fees and recommended that appellant participate in a drug treatment program.

Appellant filed a timely notice of appeal. On appeal, appellant challenges the sufficiency of the evidence to 1) support his conviction for possession for sale of a controlled substance on the ground that the prosecution failed to establish the chain of custody for the drugs and 2) support his conviction for destroying or concealing evidence on the ground that there was no evidence that evidence was destroyed or concealed; he alleges that the trial court erred by failing to instruct sua sponte as to the lesser included crime of attempted destruction or concealment of evidence; and finally, appellant challenges the imposition of one fine and one fee that were imposed by the court—an AIDS education fine and a drug program fee. For reasons that follow, we modify appellant's conviction on count two, and strike the AIDS education fine. As so modified, we affirm the judgment.

*Facts and Proceedings Below*

*The Prosecution Case*

On December 20, 2011, City of Watsonville Police Officer Scott Mead was on patrol in his marked police car in an area known for high narcotics activity. At approximately 1:30 p.m., as he was travelling through the parking lot at the rear of the Resetar Hotel, Officer Mead saw appellant. Officer Mead saw Luis Galvan by a vehicle; it appeared that he was rummaging through papers. Appellant walked past Officer Mead's patrol car and told Galvan that it was time to go. Officer Mead knew appellant from prior contact he had had with him.

Officer Mead parked alongside Galvan's vehicle. As Officer Mead got out of his patrol car he ordered appellant to stop.[2] Appellant did not stop; he got into Galvan's vehicle. Officer Mead asked Galvan, who was standing by the open driver's side door of

---

[2] Counsel stipulated that Officer Mead's contact, detention, and later search of appellant were "entirely lawful."

2

his vehicle, to step away. As Galvan stepped away, he put up his hands. Officer Mead saw appellant throw back his head and "throw something inside of his mouth." Officer Mead saw that the object was "little and red." Appellant appeared to choke and then leaned toward the driver's side of the vehicle. The next thing Officer Mead saw was "small balloon bindles come flying outside of the driver's side door." Officer Mead told Galvan to put his hands on the truck bed. Officer Mead moved around the vehicle to detain appellant; he placed him in handcuffs. An off-duty police officer arrived and handcuffed Galvan.

Officer Mead, who testified that he had investigated 50 to 80 cases of possession of narcotics, went over to what he suspected were narcotics and found five "little water balloons that had been wrapped into little balls, or bindles"; each contained a dark substance. Officer Mead unraveled one balloon and found it contained a "black, tar-like substance"; Officer Mead suspected that it was heroin. Officer Mead had seen heroin packaged in a similar manner "[m]any times." He collected the balloons, placed them into a plastic baggie and then put the baggie into his pocket before completing appellant's arrest.

Later, Officer Mead used the field test in "Narcotics Pouch Number 924" to confirm his suspicions. He tested one of the bindles and it was "presumptive positive for heroin." Officer Mead testified that due to the fact that the other bindles were the same "coloring" and "size" he "presumed" that the other bindles "were also heroin." When asked if the drug testing ended there, or did it go on somewhere else for further testing, Officer Mead testified that "[i]t then goes to the DOJ, where they will do the actual testing of the narcotics."

A search of appellant's person located a cellular telephone, which contained photographs of appellant and his girlfriend. After Officer Mead told appellant that he had seen him spit out bindles that contained what he suspected was heroin, appellant said that

3

would have been impossible because his teeth would have come out of his mouth. Appellant demonstrated by spitting out his dental bridge.

At trial, Officer Mead identified photographs depicting cellular telephone messages recovered from appellant's telephone, as well as photographic images that had been stored there. In addition, Officer Mead identified a photograph depicting the bindles he located on the ground. He testified that the photograph depicting the "black, tar-like substance [was] the heroin that [he] tested that was out of the orange, unraveled balloon . . . ." The photograph showed not only the bindles that Officer Mead found, but also the test kit that Officer Mead used as well as packaging material—tinfoil, which Officer Mead located on the passenger side floorboard of Galvan's vehicle. Officer Mead testified that the tin foil could be used to smoke heroin as well as be used as a packaging material. Officer Mead said that the gross weight of the heroin with the packaging material was 1.6 grams, but each piece of heroin without the packaging material weighed .2 of a gram for a total of 1 gram.

Rachel Frase, a criminalist at the Department of Justice, testified that her practice for testing suspected heroin was to perform two separate color tests, then run a chemical extraction with a gas chromatograph-mass spectrometer on the sample. Frase identified a photograph that she took, which she testified depicted the "evidence that was in the evidence envelope" that she retrieved from the Department of Justice's evidence vault. Frase said that the photograph contained her handwriting. Frase described the evidence she received as "small balloons and those five bindles inside." Two color tests that she performed on a sample from the biggest bindle indicated the presence of opiates. A chloroform sample extraction on the sample she ran through the gas chromatograph-mass spectrometer showed that it contained heroin. As to the remaining bindles, each had a brown substance inside plastic. Frase identified People's Exhibit 3 as the laboratory report she generated in this case in which she had concluded that the sample she analyzed contained heroin.

4

Frase testified that police agencies deliver suspected contraband in evidence envelopes to Department of Justice clerical staff, who then document and place the envelopes into the evidence vault for eventual testing. In this case, Frase received a "heat-sealed" pouch containing five bindles from the Watsonville Police Department. Frase testified that the bindle she tested weighed .2 of a gram. At the bottom of the report where there was a description of the item as one gram of heroin, she took that from what was written on the envelope by the law enforcement agency.

Watsonville Police Officer Juan Trujillo testified that a .2 of a gram bindle would sell on the street for $20. Officer Trujillo opined that in this case the balloon and plastic packaging used and the fact that the bindles individually weighed .2 of a gram indicated that they were packaged for sale. Officer Trujillo explained that the balloons can be swallowed, secreted from law enforcement and then retrieved after passing through the digestive tract. In his experience, dealers routinely hold the balloons in their mouth in anticipation of sales and to secrete them from law enforcement. Based on the totality of the circumstances, including the sales related texts found on appellant's cellular telephone, the packaging, the weight of each bindle and the number of bindles, Officer Trujillo opined they were possessed for sale. In Officer Trujillo's opinion, one text message retrieved from appellant's telephone suggested "Homie" told appellant that $360 was owed for heroin supplied. Officer Trujillo explained the relevance of numerous other text messages found on appellant's telephone and testified that they indicated drug sales.

*The Defense Case*

Luis Galvan testified for the defense that on December 20, 2011, his vehicle was parked at the Ace Hardware parking lot. He had given appellant a ride to the hardware store. Galvan said that appellant's relatives resided at the Resetar Hotel, which was nearby. He said that an officer arrived and told him to move away from his vehicle; he said appellant did not enter the vehicle. Galvan said he was placed in handcuffs; he did

5

not see appellant spit out anything or possess any drugs; appellant did not resist or try to run away. Galvan admitted that in 2003 he was convicted of a felony.

*Discussion*

*Chain of Custody*

Appellant argues that the prosecution failed to show that the substance that he possessed was heroin because the prosecution failed to establish that the evidence seized from him by Officer Mead was the same evidence that was tested by criminalist Rachel Frase. Appellant frames the issue as one of insufficient evidence to support his conviction.

After the court qualified Frase as an expert in the analysis of heroin, the prosecutor asked her if she was "familiar with the drug analysis that was done in a case involving defendant Manuel Murillo." Frase confirmed that she was. The prosecutor asked Frase, "And what did you receive in that case before you began your analysis?" Defense counsel objected on the ground of "chain of custody." The court overruled the objection. Frase stated that she was "not sure what [the] question is." Accordingly, the prosecutor asked her "What made its way to you to analyze?" Frase stated, "We received a[n] evidence envelope from the law enforcement agency, containing suspected controlled substances."

Later when the prosecutor asked if she could publish Exhibit 2 (the photograph that Frase took of what she received) to the jury, defense counsel again objected on "chain of custody" grounds. Again, the court overruled the objection. The court stated, "chain of custody does not necessarily go to admissibility but may go to the weight, and we'll make a determination as to whether or not there's any further evidence as to chain of custody."

Later, when counsel and the court were going through the exhibits in order to determine whether they should be admitted, defense counsel objected to Exhibits 2 and 3 (the photograph taken by Frase and her report) being admitted into evidence, again on

6

chain of custody grounds. The court stated that it understood the objection, but said that it was satisfied that a sufficient showing had been made that the items had not been altered. The court did not feel "that there is any speculation that can be used to exclude that particular evidence, and, therefore, the Court finds that any defect in the chain of custody would go [to] the weight of the evidence, as opposed to admissibility . . . . " Accordingly, the court allowed Exhibits 2 and 3 to be admitted.

The rules for establishing chain of custody are well established. " 'The burden on the party offering the evidence is to show to the satisfaction of the trial court that, taking all the circumstances into account including the ease or difficulty with which the particular evidence could have been altered, it is reasonably certain that there was no alteration. [¶] The requirement of reasonable certainty is not met when some vital link in the chain of possession is not accounted for, because then it is as likely as not that the evidence analyzed was not the evidence originally received. Left to such speculation the court must exclude the evidence. [Citations.] Conversely, when it is the barest speculation that there was tampering, it is proper to admit the evidence and let what doubt remains go to its weight.' [Citation.]" (*People v. Williams* (1989) 48 Cal.3d 1112, 1134; Accord *People v. Diaz* (1992) 3 Cal.4th 495, 559; *People v. Catlin* (2001) 26 Cal.4th 81, 134 (*Catlin*).)

" 'While a perfect chain of custody is desirable, gaps will not result in the exclusion of the evidence, so long as the links offered connect the evidence with the case and raise no serious questions of tampering.' " (*Catlin*, *supra*, 26 Cal.4th at p. 134, citing Mendez, Cal. Evidence (1993) § 13.05, p. 237.)

Appellant argues as "in *People v. Jimenez* (2008) 165 Cal.App.4th 75, 80, the chain of custody in this case was inadequate to establish that the evidence analyzed was the same evidence collected during [his] arrest."[3]

---

[3] Defense counsel argued to the jury that he was disturbed by the difference on Exhibits 1 and 2. Specifically, he stated "I see . . . a couple of red things, a blue one, the

7

In *People v. Jimenez, supra*, 165 Cal.App.4th 75, the evidence at issue was a DNA swab taken from the bicycle on which a bank robbery suspect was seen fleeing the scene and a subsequent DNA sample taken from the defendant for comparison. (*Id.* at p. 79.) The *Jimenez* court identified a lengthy list of questions that remained unanswered by the chain of custody evidence presented by the prosecution, noting that the record was silent as to who labeled and sealed the swabs, and who if anyone segregated them from other evidence and placed them in secure storage to minimize the possibility of inadvertent substitution. (*Id.* at p. 80.) In addition, the court noted the absence of evidence establishing that protocol was followed for the secure transfer of the evidence within the department and the DOJ. (*Ibid.*) At trial, a police sergeant testified "conclusorily" that he made arrangements with a technician to take DNA swabs from the defendant and then either he or the chief investigating officer instructed someone to send the swabs to the criminalist. (*Id.* at p. 79.) The criminalist testified that he received the swabs and also the probability that a random person would have the same profile. (*Ibid.*) On appeal, the *Jimenez* court found the chain of custody to be "woefully inadequate," which raised

---

black one that potentially this other balloon contained, but then when I look at what was tested, I'm concerned that they're not the exact same colors, and that really bothers me. There's a blue one, there's three red ones, and an orange one, or yellowish orange one. [¶] You know they're close, but the reason I objected to the chain of custody of the evidence is that the officer told you he took whatever those bindles were and he just put them in his pocket, and the next thing you heard was somebody at DOJ tested this stuff. (Indicating.) And so I don't know if he had other things in his pocket from other arrests. It's entirely possible. I don't know what happened. There's just no chain of custody, and it disturbs me that there's different color balloons, and I think that that's reasonable doubt in and of itself." On this court's own motion we had the record augmented with the Exhibits 1(the photograph that Officer Mead took of the evidence he collected), 2 (the photograph that Frase took of the evidence she tested) and 3 (Frase's laboratory report). There are some similarities in the photographs, but also some differences in the color of the balloons. In addition, it appears that Frase did not receive the evidence for testing until June 6, 2012, almost six months after the evidence was collected. There was absolutely no evidence presented as to what happened to the evidence between the time it was collected and the time Frase received it.

serious questions as to whether the reference sample had anything to do with the defendant. (*Id.* at p. 81.) One of the questions the *Jimenez* court wanted to know was whether the swabs were still sealed on arrival at the crime lab. (*Id.* at p. 80.)

As noted, a party seeking to introduce evidence has the burden of showing that it is reasonably certain that there was no alteration of the evidence. (*People v. Catlin, supra,* 26 Cal.4th at p. 134.) We reiterate that " '[t]he requirement of reasonable certainty is not met when some vital link in the chain of possession is not accounted for, because then it is likely as not that the evidence analyzed was not the evidence originally received.' " (*Ibid.*) "In the absence of fundamental unfairness, state law error in admitting evidence over a chain of custody objection is reviewable for abuse of discretion. [Citations.] Erroneous admission of evidence that is so prejudicial as to render a trial fundamentally unfair, however, offends due process. [Citations.]" (*People v. Jimenez, supra,* 165 Cal.App.4th at pp. 81-82.) In such cases, the judgment will be reversed unless the error is harmless beyond a reasonable doubt. (*Id.* at p. 82.)

In this case, we have serious concerns about the missing links in the chain of custody. Given, as Officer Mead testified, that heroin is packaged this way, there was no testimony from Officer Mead about how he took the particular evidence from this case and placed it into a sealed envelope and labeled it in such a way as to distinguish it from any other evidence that was being transported to the DOJ lab; and Officer Mead never testified and no one else testified about how the baggie that Officer Mead put into his pocket and its contents were stored before being sent to Frase and no testimony about how it got to Frase.[4] Simply put, the People did not meet their burden of showing that all vital links in the chain of possession were accounted for in this case.

---

[4] In fact Officer Mead did not even testify that he sent this particular evidence to the DOJ. Rather, he testified generically that suspected drugs go to the DOJ for further testing.

The error, however, was harmless because the other evidence that was presented at trial was sufficient to prove beyond a reasonable doubt that appellant possessed heroin and that it was possessed for sale. In short, there was ample circumstantial testimony that shows beyond a reasonable doubt that appellant possessed heroin for sale. We note that circumstantial evidence may be used to prove the nature of a substance. (*People v. Sonleitner* (1986) 183 Cal.App.3d 364, 369.) Similarly, "[g]uilt of possession of a narcotic may be established without introducing the narcotic in question into evidence. In other words the prosecution need not physically produce the narcotic to sustain a proper conviction of possession of narcotics." (*People v. Marinos* (1968) 260 Cal.App.2d 735, 738; see also *People v. Chrisman* (1969) 256 Cal.App.2d 425, 431-432 [corpus delicti of drug offense may be proved by circumstantial evidence].)

"The essential elements of possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially.' [Citations.]" (*People v. Palaschak* (1995) 9 Cal.4th 1236, 1242.) As noted, the nature of a substance, similar to any other fact in a criminal case, may be proved by circumstantial evidence. "It may be proved, for example, by evidence that the substance was a part of a larger quantity which was chemically analyzed [citations], *by the expert opinion of the arresting officer* [citation], and by the conduct of the defendant indicating consciousness of guilt. [Citation.]" (*People v. Sonleitner*, *supra*, 183 Cal.App.3d at p. 369, italics added.)

Here, Officer Mead testified that when he examined the bindles and found a "black tar like substance," based on his experience in investigating numerous drug related cases, he suspected the substance inside was heroin. A test that he ran confirmed his suspicion. Officer Mead photographed bindle making material on the floorboard of the passenger side of the truck, some of which could also be used for smoking heroin. Appellant's cellular telephone contained text messages that expert testimony established showed that

10

appellant was engaged in drug sales. Finally, Officer Mead saw appellant attempt to swallow at least one of the bindles and then throw the bindles from the truck; we presume in an effort to distance himself from the drugs. Based upon this circumstantial evidence, we conclude that there was substantial evidence that appellant was in possession of heroin and that he possessed it for sale. Accordingly, we conclude that a jury would have found beyond a reasonable doubt that appellant was in possession of heroin and that he possessed it for sale.

*Sufficiency of the Evidence to Support the Conviction for Concealing or Destroying Evidence*

Appellant contends, and respondent concedes that the evidence was insufficient to support the conviction on count two—concealing or destroying evidence.

Appellant was charged with destroying or concealing evidence, which is a misdemeanor violation of Penal Code section 135. The applicable code section sets forth the elements necessary to establish this charge:

"Every person who, knowing that any . . . . thing, is about to be produced in evidence upon any trial, inquiry, or investigation whatever, authorized by law, willfully *destroys* or *conceals* the same, with intent thereby to prevent it from being produced, is guilty of a misdemeanor." (Pen. Code, § 135, italics added.)

At best, the evidence supports an attempt by appellant to destroy or conceal evidence. There was no testimony adduced that appellant was successful in either destroying or concealing the heroin. In fact the evidence was contrary to any such conclusion. Officer Mead testified that he saw appellant place something in his mouth, but then spit or throw the bindles out of the truck. Officer Mead was able to recover the evidence.

An attempt is a direct but ineffectual act toward the completion of the target crime. (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1381; see also *People v. Dillon* (1983) 34 Cal.3d 441, 454–455.) As in the case of *People v. Hill* (1997) 58 Cal.App.4th 1078

11

(*Hill*), the evidence here established that appellant attempted to destroy or conceal the heroin by attempting to swallow it and then by spitting or throwing it out of the truck.

In *Hill,* a case from this court, the defendant tore up stolen or counterfeit traveler's checks and threw them out of a car. An officer who was pursuing the defendant saw defendant throw out the torn-up checks, which were later recovered and introduced into evidence. The defendant was convicted of destroying or concealing evidence. (*Hill*, *supra*, 58 Cal.App.4th at p. 1082.)

In *Hill*, we noted that "[t]he purpose of section 135 is to prevent the obstruction of justice. [Citation.] The plain meaning of 'destroy' is to ruin something completely and thereby render it beyond restoration or use. (See Webster's New Internat. Dict. (3d ed. 1981) p. 615.) Under this definition, if one destroys evidence, it necessarily becomes unavailable and cannot be produced. Conversely, if, despite one's efforts, the evidence is or can be restored and used, then, by definition, it has not been destroyed; rather, such efforts constitute an attempt: a direct, but ineffectual, act toward the commission of a crime. [Citations.]" (*Hill*, *supra*, 58 Cal.App.4th at p. 1089.)

We reasoned that "[s]ince the common meaning of 'destroy' is reasonable" and applying it was consistent with and promoted "the purpose of the statute," we declined to give it "a broader or narrower construction." (*Hill*, *supra*, at p. 1089.) Moreover, we concluded that the "plain meaning" did not lead to absurd or unintended consequences. (*Ibid*.) We explained that "[t]ogether, the statute and the proscription against attempts (§ 664) reach any and every direct act taken to destroy evidence committed with the requisite intent, regardless of whether the acts succeed. This construction also maintains a clear line between committing and attempting to commit the offense by acts of destruction." (*Ibid*.)

Similarly, with respect to concealing evidence, we reasoned that "[t]he word 'conceal' simply means to hide or cover something from view. (Webster's New Internat. Dict., *supra*, at p. 469.) Section 135 proscribes concealing evidence 'about to be

12

produced in evidence upon any trial, inquiry, or investigation.' Given its plain meaning, 'conceal,' in context, does not necessarily or reasonably suggest that a defendant must render evidence permanently unseen, or . . . unavailable.  Rather successful concealment of evidence from a particular investigation is sufficient." (*Hill*, *supra*, at p. 1090.)

We examined two scenarios to illustrate our point.  " For example, a thief eludes the police and buries his booty in a neighbor's backyard. Police arrive and search him and his property but find nothing.  The next day, a neighbor leads them to freshly tilled earth in his yard, and they dig up the stolen property.  Has the thief violated the statute or merely attempted to do so?  Given the ordinary meaning of 'conceal,' the purpose of the statute, and its applicability to *any* investigation, the thief has, in our view, violated the statute: his conduct successfully hid stolen property from view during the first search of him and his property and thereby impeded, frustrated, and prolonged an investigation of the theft.  [¶]  It follows from our analysis, however, that where a thief does not interfere with, impede, frustrate, or prolong a lawful investigation, for example, where a thief is interrupted while concealing evidence or where the police watch him conceal it, he has not successfully hidden the evidence or appreciably affected an investigation and thereby obstructed justice.  He has merely tried to do so.  Thus, his conduct constitutes an attempt to violate the statute by concealment." (*Hill*, *supra*, at p. 1090.)

In *Hill*, we found the evidence insufficient to establish the completed crime of which the defendant was convicted; accordingly, we reversed his conviction.  Having found that the error required reversal, we did not address the court's failure to sua sponte instruct the jury on the crime of attempted destruction or concealment of evidence.  (*Id*. at pp. 1091-1092.)

However, in the light of the current situation where judicial resources are severally strained, we depart from the ultimate resolution we reached in *Hill,* where we declined to resolve the defendant's claim regarding the failure to instruct the jury on the crime of attempt. (*Hill*, *supra*, at p. 1091.)  The result we reached in *Hill,* which effectively

allowed the prosecution to retry the defendant for attempted destruction or concealment, currently, is a waste of strained and scarce judicial resources, or worse, in the event the prosecution declines to retry a misdemeanor, would relieve appellant of liability for conduct which was established by the evidence. Therefore, we shall address appellant's claim as to instructional error, and provide the appropriate and judicious remedy appellant is entitled to receive.

Appellant correctly asserts the trial court failed to instruct the jury on the lesser offense of attempted destruction or concealment of evidence. (Pen. Code, §§ 664/135.) Respondent concedes this point, and as noted, agrees appellant's misdemeanor conviction for actual destruction or concealment of the evidence (Pen. Code, § 135) cannot stand.

The trial court has a sua sponte duty to instruct the jury as to a lesser included offense, but only when the evidence establishes the offense committed is less than that which was charged. (*People v. Holt* (1997) 15 Cal.4th 619, 673–674; *People v. Breverman* (1998) 19 Cal.4th 142, 148–149.) That was precisely the case here. As noted, Officer Mead was able to retrieve the evidence appellant attempted to swallow and then expel from the truck; the bindles still retained their evidentiary value and as it was established, contained a useable and saleable amount of heroin. Neither the prosecution nor the defense specifically requested a jury instruction on the lesser included offense of attempted destruction or concealment of evidence. However, this does not absolve the trial court of its duty to "act as a neutral arbiter between the contesting parties to guide the jury on the law." (*People v. Turner* (1983) 145 Cal.App.3d 658, 678–679, disapproved on another ground in *People v. Majors* (1998) 18 Cal.4th 385, 411, and in *People v. Newman* (1999) 21 Cal.4th 413, 422, fn. 6.)

At least in the context of a noncapital offense, the failure to instruct on a lesser included offense is an error of California law, and is resolved upon application of the test announced in *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Breverman, supra,* 19 Cal.4th at p. 165.) Accordingly, we conclude, after an examination of the entire

14

cause, including the evidence, it is reasonably probable appellant would have obtained a more favorable outcome "had the error not occurred." (*People v. Watson, supra,* 46 Cal.2d at p. 836.)

Here had the jury been instructed on the lesser crime of attempted destruction or concealment of evidence, it is reasonably probable the jury would have found appellant guilty of the lesser but not the greater charge. As noted, there was sufficient evidence to convict appellant of attempt. Therefore, we shall reduce appellant's conviction on count two to a violation of Penal Code section 664 (attempt) and Penal Code section 135. Commensurate with this, the punishment allowed for this offense is one-half of that to be imposed for actual completion of the crime (Pen. Code, § 664, subd. (b)). Appellant's punishment on count two is therefore reduced to 18 days in custody, credit for time served.

An appellate court is not restricted to the remedies of affirming or reversing a judgment. Where the prejudicial error goes only to the degree of the offense for which the defendant was convicted, the appellate court may reduce the conviction to a lesser degree and affirm the judgment as modified, thereby obviating the necessity for a retrial. (*People v. Matian* (1995) 35 Cal.App.4th 480, 487; see also Pen. Code, §§ 1181, subd. 6, 1260; *People v. Reeves* (2001) 91 Cal.App.4th 14, 54; *People v. Harris* (1968) 266 Cal.App.2d 426, 434-435; *People v. Bailey* (1974) 38 Cal.App.3d 693, 700.)

*Aids Education Fine*

The probation officer recommended and the court imposed a $190 AIDS education fine. Appellant contends and respondent concedes that we must strike this fine as unauthorized.

As relevant here, Penal Code section 1463.23 provides, "fifty dollars ($50) of each fine imposed pursuant to Section 4338 of the Business and Professions Code; subdivision (c) of Section 11350, subdivision (c) of Section 11377, or subdivision (d) of Section 11550 of the Health and Safety Code; or subdivision (b) of Section 264, subdivision (m)

15

of Section 286, subdivision (m) of Section 288a, or Section 647.1 of [the Penal] code, shall be deposited in a special account in the county treasury which shall be used exclusively to pay for the reasonable costs of establishing and providing for the county, or any city within the county, an AIDS (acquired immune deficiency syndrome) education program under the direction of the county health department, in accordance with Chapter 2.71 (commencing with Section 1001.10) of Title 6, and for the costs of collecting and administering funds received for purposes of this section."

Appellant was convicted of possession for sale of heroin. (Health & Saf. Code, § 11351.) Appellant was not convicted of any of the offenses listed in Penal Code section 1463.23. There is no statutory authority to impose an AIDS education fine for the drug offense of which appellant was convicted.[5] As such this fine was unauthorized. "The imposition of a sentence not statutorily authorized is jurisdictional error that is subject to correction whenever it comes to a court's attention. [Citations.]" (*People v. Martinez* (1998) 65 Cal.App.4th 1511, 1519.) Accordingly, we will strike the AIDS education fine.

*Drug Program Fee*

In addition to the AIDS education fine the court imposed, appellant was ordered to pay a drug program fee of $150. The court did not specify the basis for the fee, but we assume that it was imposed pursuant to Health and Safety Code section 11372.7. Counsel did not object to the imposition of the fee.

Appellant contends that we must strike this fee because there was insufficient evidence that he had the ability to pay the fee.

---

[5] Furthermore, we do not know where the probation officer came up with the amount of the fine. We note that the AIDS education fine is not to exceed $70 under all the statutes mentioned in Penal Code section 1463.23. (Bus. & Prof. Code, § 4338, Health & Saf. Code, §§ 11350, subd. (c), 11377, subd. (c), 11550, subd. (d), Pen. Code, §§ 264, subd. (b), 286, subd. (m), 288a, subd. (m) & 647.1.)

16

Health and Safety Code section 11372.7 provides, "(a) Except as otherwise provided in subdivision (b) or (e), each person who is convicted of a violation of this chapter shall pay a drug program fee in an amount not to exceed one hundred fifty dollars ($150) for each separate offense. The court shall increase the total fine, if necessary, to include this increment, which shall be in addition to any other penalty prescribed by law. [¶] (b) The court shall determine whether or not the person who is convicted of a violation of this chapter has the ability to pay a drug program fee. If the court determines that the person has the ability to pay, the court may set the amount to be paid and order the person to pay that sum to the county in a manner that the court believes is reasonable and compatible with the person's financial ability. In its determination of whether a person has the ability to pay, the court shall take into account the amount of any fine imposed upon that person and any amount that person has been ordered to pay in restitution. If the court determines that the person does not have the ability to pay a drug program fee, the person shall not be required to pay a drug program fee."

Thus, the drug program fee is mandatory, provided the trial court determines the defendant has the ability to pay the fee. (Health & Saf. Code, § 11372.7, subd. (b).) Appellant concedes that the court's finding that he had an ability to pay may be implied, but argues that there was insufficient evidence to support even an implied finding of his ability to pay.

Absent evidence to the contrary, this court presumes that the trial court followed the law and performed its duty under Evidence Code section 664, and that the requisite determination of appellant's ability to pay is implicit in the trial court's order. (See, *People v. Staley* (1992) 10 Cal.App.4th 782, 785.)

In determining a defendant's ability to pay, the court is permitted to consider various criteria, including a defendant's future discernible financial position. (*People v. Phillips* (1994) 25 Cal.App.4th 62, 70; *People v. Frye* (1994) 21 Cal.App.4th 1483, 1487.)

17

Appellant was sentenced to six years in state prison, for purposes of the drug program fee the court could have assumed that appellant would be able to obtain prison employment. (See *People v. Frye, supra,* 21 Cal.App.4th at pp. 1486–1487.) Penal Code section 2700 provides, in relevant part, "The Department of Corrections shall require of every able-bodied prisoner imprisoned in any state prison as many hours of faithful labor in each day and every day during his or her term of imprisonment as shall be prescribed by the rules and regulations of the Director of Corrections." This section requires that prisoners who perform assigned work be compensated. (*Ibid.*) In the absence of an objection by appellant, the trial court could reasonably presume the fine would be paid out of appellant's prison wages. If appellant was ineligible for prison work assignment, it was incumbent upon him to alert the court to any such disability. (See *People v. Staley, supra,* 10 Cal.App.4th at p. 786.)

### *Disposition*

Appellant's conviction on count two for destroying or concealing evidence is modified to an attempted destruction or concealment of evidence (Pen. Code, §§ 664/135). Appellant's sentence on count two, is reduced to 18 days, credit for time served. In addition, we strike the AIDS education fee of $190. As so modified the judgment is affirmed. The clerk of the court is ordered to prepare an amended abstract of judgment, which shall reflect such modification and forward a corrected copy to the Department of Corrections and Rehabilitation.


ELIA, J.


WE CONCUR:

RUSHING, P. J.

PREMO, J.

18